101 F.3d 714
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Charles R. SEKERAK, Petitioner,
v.
RAILROAD RETIREMENT BOARD, Respondent.
 No. 96-3061.
 United States Court of Appeals, Federal Circuit.
 Nov. 4, 1996.
 
 Before RICH, Circuit Judge, SKELTON, Senior Circuit Judge, and MICHEL, Circuit Judge.
 SKELTON, Senior Circuit Judge.
 
 DECISION
 
 1
 Petitioner Charles R. Sekerak appeals the decision of the Merit Systems Protection Board (MSPB or board), Docket No. CH-0752-95-0684-I-1, dated November 2, 1995, which left undisturbed the initial decision of the administrative judge (AJ), dated July 12, 1995, which approved the action of the Railroad Retirement Board (agency) in removing petitioner from his position with the agency for misuse of a government automobile, and for directing subordinate employees to perform personal services for him during work hours, and for making false statements to investigators. We vacate and remand.
 
 BACKGROUND AND DISCUSSION
 
 2
 At the time petitioner was removed he was the Assistant Inspector General For Investigations (AIG) in the Office of Inspector General (OIG) in Chicago, Illinois. He had over 22 years of unblemished government service, including eight years with the agency and 11 years with the Federal Bureau of Investigation (FBI).
 
 
 3
 Petitioner's duties as AIG required him to develop and manage a program of administrative and criminal investigations covering all activities of the agency. Such investigations included criminal fraud, white collar crime, abuse of public trust, employee integrity and misconduct. He was responsible for investigating violations of laws, rules and regulations, as well as claims of mismanagement, waste of funds and abuse of authority in the agency. The Inspector General (IG) delegated to petitioner full authority to act for him in his absence. The facts show that petitioner served as Acting IG continuously from October 1993, to October 1994, which covered the period during which his alleged misconduct occurred in this case.
 
 
 4
 On October 14, 1994, Martin Dickman was selected Inspector General of the agency instead of petitioner who had also applied for the position. On January 19, 1995, Dickman proposed in a notice to petitioner that he be removed from his position based on alleged evidence that he had (1) directed and participated in the misuse of a government vehicle, (2) directed subordinate employees to perform tasks of a personal nature for him during work hours and (3) made false statements about the incidents to investigators of the Office of Special Investigations of the United States General Accounting Office. The factual allegations underlying these charges were stated in the following statement of specifications issued by Dickman:
 
 
 5
 In February 1994, during regular work hours, you directed Terrence Hake (Operations Officer, Office of Investigations, Office of Inspector General) to accompany your son, Jeffery Sekerak, who is not an employee of this agency, to court in connection with his appearance concerning his arrest on a disorderly conduct charge.
 
 
 6
 On April 6, 1994, you again directed Mr. Hake to attend another court date with Jeffery and William G. McGarr, who was then the Attorney Advisor in the Office of the Inspector General. On that date, you told Mr. Hake, Mr. McGarr, and your son, to travel together to the courthouse in a government car, assigned for your use in conjunction with your official duties, and to also use this car to drive by the scene of your son's arrest on the way to the courthouse. At this hearing, Mr. McGarr represented your son in answering the charges of disorderly conduct against him. All of these activities involving your son's court appearance took place during Mr. Hake and Mr. McGarr's official duty time.
 
 
 7
 On April 8, 1994, during regular office hours, you directed Mr. Hake to drive you in a government vehicle to Chicago Police Headquarters to deliver an order of expungement for your son's arrest record, which was received pursuant to the earlier hearing.
 
 
 8
 Beginning in early 1994, you directed Mr. Hake to perform, on a priority basis, various tasks during regular office hours, to assist your son, Jeffery, in obtaining employment. This included review of a draft application and preparation of a Standard Form 171, Application for Federal Employment.
 
 
 9
 On December 5, 1994, you were interviewed by investigators from the Office of Special Investigations, United States General Accounting Office. During the interview you were questioned concerning the incidents of misconduct described above. In response to this questioning you made false statements and failed to provide truthful and accurate information.
 
 
 10
 The petitioner filed a written response to these charges on February 16, 1995. In his response, he admitted that he had done the acts alleged in charges (1) and (2), but contended that the penalty of removal was excessive and inappropriate and should be mitigated to a lesser penalty. In support of his mitigation argument, he cited his 22 years of unblemished government service, and submitted documents and information showing: (1) his October 28, 1994 recertification in the Senior Executive Service; (2) his 1994 performance rating, in which he received an overall exceptional rating; (3) his December, 1991 recertification in the Senior Executive Service; (4) the March, 1994 recommendation by the then Inspector General of petitioner for the Inspector General position; (5) the growth of the Office of Inspector General for which he was responsible; and (6) awards received by him, including Senior Executive Service performance awards, with bonuses in 1991, 1992, 1993 and 1994; and numerous special service awards, with bonuses between 1987 and 1992. He also pointed out that at the time the charges were filed against him he only needed four more months of government service to be eligible to retire.
 
 
 11
 On February 22, 1995, Mr. Dickman issued a letter of decision in which petitioner was removed from his position, effective February 24, 1995. The petitioner appealed to the MSPB, which referred the matter to an AJ, who held a hearing on June 14, 1995. The AJ issued his initial decision on July 12, 1995, affirming the action of the agency on charges (1) and (2). He dismissed charge (3), citing our decision in Grubka v. Dep't of the Treasury, 858 F.2d 1570, 1574 (Fed.Cir.1988), which held that a person charged with an infraction can deny that he is guilty and the denial will not be a separate offense. Otherwise, he could not defend himself against the charge, which would be a denial of due process.
 
 
 12
 The petitioner filed a petition for review, which was denied by the full board on November 2, 1995. This denial resulted in the AJ's decision becoming the final decision of the board. The petitioner has now appealed to this court.
 
 
 13
 The issue in this case is whether the removal penalty imposed on the petitioner by the agency was excessive, disproportionate to the sustained charges, an abuse of discretion, or arbitrary, capricious or unreasonable. When the penalty is attacked for being inappropriate, excessive or unreasonable, as here, the board must consult the agency's table of penalties to determine whether the chosen penalty is excessive. This is especially important when one of the initial charges has been dismissed, as in the instant case. Hagmeyer v. Dep't of the Treasury, 757 F.2d 1281, 1285 (Fed.Cir.1985). In such a situation, in order for the penalty to be sustained on the remaining charges, the board's decision must contain a reasoned balancing of the relevant Douglas factors, and demonstrate why the penalty based on the remaining charges do not exceed the bounds of reasonableness. Kline v. Dep't of Transp., F.A.A., 808 F.2d 43 (Fed.Cir.1986). The Douglas factors, which were listed by the board in Douglas v. Veterans' Admin., 5 M.S.P.R. 280 (1981) as a guide for it and the courts, must be considered in determining the appropriateness of the penalty in cases of this kind. Also, the board must make findings on all relevant Douglas factors, but need not make findings on factors that are not relevant. Van Fossen v. Dep't of Hous. and Urban Dev., 748 F.2d 1579 (Fed.Cir.1984). The Douglas factors are set forth in Douglas, 5 M.S.P.R. at 305-306, as follows:
 
 
 14
 (1) The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;
 
 
 15
 (2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;
 
 
 16
 (3) the employee's past disciplinary record;
 
 
 17
 (4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;
 
 
 18
 (5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;
 
 
 19
 (6) consistency of the penalty with those imposed upon other employees for the same or similar offenses;
 
 
 20
 (7) consistency of the penalty with any applicable agency table of penalties;
 
 
 21
 (8) the notoriety of the offense or its impact upon the reputation of the agency;
 
 
 22
 (9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;
 
 
 23
 (10) potential for employee's rehabilitation;
 
 
 24
 (11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and
 
 
 25
 (12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.
 
 
 26
 Notwithstanding its duty to consider all relevant Douglas factors, the board failed to do so. For instance, it did not consider nor comply with relevant factor No. (6), which required it to determine whether the removal penalty was consistent with those imposed on other employees for the same or similar offenses. The decisions of the board in the following cases involving one of the same offenses show that a removal penalty was not imposed on any of the charged employees. Most of them received a 30-day suspension. See, e.g., Soroko v. Defense Investigative Serv., 29 M.S.P.R. 402 (1985) (30-day suspension for parking a government car at his home for two months); Doolin v. Dep't of Justice, 21 M.S.P.R. 563 (1984) (30-day suspension for keeping a government car overnight when a request to do so had been denied); Himmel v. Dep't of Justice, (30-day suspension for unauthorized use of a government vehicle); Clark v. United States, 162 Ct.Cl. 477 (1963) (90-day suspension without pay for unofficial use of government car was sufficient punishment); and Dep't of Health and Human Servs. v. Haley, 20 M.S.P.R. 365 (1984) (30-day suspension for unauthorized use of a government vehicle).
 
 
 27
 In the next place, the board did not consider nor comply with relevant factor No. (7), which required it to determine whether the removal penalty of the agency was consistent with the agency's table of penalties. In fact, it did not even mention the table of penalties in its decision. The agency's table of penalties provides a range of penalties from a written warning to 5-days' suspension for the first offense of the unauthorized use of government equipment or property. The charge filed against petitioner in this case for misuse of a government vehicle was the first time that he had ever been charged with this offense. 31 U.S.C. § 1349(b) provides for a penalty of suspension without pay for one month or when circumstances warrant for a longer period or removal from office, for the use of a government-owned passenger motor vehicle for other than official purposes.
 
 
 28
 During oral argument petitioner's counsel stated in response to questions from the bench that the government car that had been assigned to him and which is involved in this case had been driven only 40 blocks in the City of Chicago when he was charged with its misuse. He contended before the board, and contends here, that this misuse of the car was de minimis, and therefore, the imposition of a removal penalty was excessive and unreasonable. Counsel also stated that the parties had stipulated that 14 hours of work time, spread over a period of nine months, were used by the three subordinate employees of petitioner, who were named in charge (2) in trying to find a job for petitioner's son Jeffery. The petitioner says this time was also de minimis, and that there is no provision in the agency's table of penalties or in any rule, regulation or statute, that makes it a punishable offense. Under these circumstances, petitioner says the removal penalty was excessive and not within the bounds of reasonableness.
 
 
 29
 Finally, the board did not consider nor make findings on relevant Douglas factor No. (12), which required it to determine the adequacy and effectiveness of alternative sanctions to deter the petitioner or others from engaging in the conduct charged against the petitioner in this case. Alternative sanctions, other than removal, available to the agency and the board for the misuse of the automobile in charge (1) were suspension for one month or longer. 31 U.S.C. § 1349(b). Charge (2) was filed under the provisions of 5 U.S.C. § 7543, and 5 C.F.R., pt. 752, §§ 601-606, where penalties are not specified. Under these circumstances, various sanctions were available, including admonition, written warning, reprimand, demotion and suspension with or without pay. Under the provisions of factor No. (12), it was the duty of the board to make findings on these penalties to determine whether any of them would be adequate and effective to deter the petitioner or others from engaging in conduct in the future like that exhibited by the petitioner in the instant case. The board approved the agency's removal penalty without making these findings. The board said in Douglas v. Veterans' Admin., 5 M.S.P.R. at 303:
 
 
 30
 Any disciplinary action demands the exercise of responsible judgment so that an employee will not be penalized out of proportion to the character of the offense; this is particularly true of an employee who has a previous record of completely satisfactory service. An adverse action, such as suspension [removal], should be ordered only after a responsible determination that a less severe penalty, such as admonition or reprimand, is inadequate.
 
 
 31
 No such determination was made by the board in this case. This was an abuse of discretion.
 
 
 32
 We conclude that the AJ failed to consider all the relevant Douglas factors, and unless the findings of the AJ with respect to the missing Douglas factors, together with his prior Douglas findings, justify removal, the penalty would appear to be excessive. That is, it is unclear at present why a lengthy suspension would not have been adequate under the circumstances.
 
 
 33
 Under these circumstances, we are authorized by 5 U.S.C. § 7703(C) to overturn the decision of the board. Accordingly, we vacate the board's decision and remand the case with instructions to determine an appropriate penalty consistent with this opinion.
 
 
 34
 VACATED AND REMANDED.